IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAY JORDAN II, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-01173-M |
| | § | |
| THE CITY OF DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

On March 5, 2025, the Court heard argument on the Motion for Summary Judgment (ECF No. 147) and the Motion to Exclude Plaintiffs' Expert (ECF No. 150), filed by Defendant City of Dallas ("City"), and the Motion for Summary Judgment (ECF No. 139), filed by Defendant Steven McCraw, former Director of the Texas Department of Public Safety ("McCraw"). At the hearing, the Court held that the single incident exception to the necessity for finding a policy or practice to support § 1983 liability does not apply in light of the facts of this case. For the reasons stated below, Defendants' summary judgment motions are **GRANTED** and the City's Motion to Exclude is **DENIED AS MOOT**.

**I.      Facts Pleaded**

Plaintiffs' allegations arise out of a Black Lives Matter protest that took place in Dallas in June of 2020, following the May 25, 2020, death of George Floyd. The Second Amended Complaint alleges that Plaintiffs, Ray Jordan II and his children, Alexandria and Joshua, attended a protest outside the Frank Crowley Courts Building on June 1, 2020. ECF No. 122 ¶¶ 93–95. After initially protesting, the Jordans returned to their car in a municipal garage, but were

blocked from entering and exiting the garage by Dallas Police Department ("DPD") officers. *Id.* ¶ 96. A DPD officer stationed on the street informed Ray Jordan that the officers had received strict orders not to allow anyone to leave the garage until the protest was over, specifically telling Ray Jordan, "I got word from higher up that no one is to leave." *Id.*

Plaintiffs decided to rejoin the protest and began marching with a crowd along Riverfront Boulevard towards the Margaret Hunt Hill Bridge ("Bridge"). *Id.* ¶¶ 97–98. When the crowd arrived at the intersection of Riverfront Boulevard and the road leading to the Bridge, DPD and Department of Public Safety ("DPS") officers were stationed at the base of the Bridge, instructing the crowd to "keep moving." *Id.* ¶¶ 99–101. Plaintiffs, with others, made their way onto the Bridge, marching toward its west end. *Id.* Once on the Bridge, Plaintiffs claim they were surrounded by DPD and DPS officers from both the west and east ends of the Bridge and prevented from leaving, which they refer to as "kettling" them. *Id.* They further allege that DPD and DPS officers fired at them, and others in the crowd, rubber bullets, flash bang grenades, tear gas and kinetic impact projectiles, such as pepper balls.[1] *Id.* ¶ 246. All three Plaintiffs claim they were hit by some of these items.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings, discovery, disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of fact. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). However, if the nonmovant

---

[1] "Kettling," also known as "trap and detain," is defined in the Complaint as when police officers block off streets and corral a group of protesters into a small area to restrict movement, after which officers typically detain and/or arrest them. ECF No. 122 ¶ 50.

ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the absence of evidence supporting the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2021 WL 6884649, at *4 (N.D. Tex. Nov. 24, 2021), report and recommendation adopted, 2022 WL 447085 (N.D. Tex. Feb. 14, 2022), aff'd sub nom. *Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302 (5th Cir. 2023) (citing *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted)). The party opposing a summary judgment motion must identify specific evidence in the record that supports the party's claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Id*. The Court assumes the facts to be those stated in the operative Complaint, as set out above.

### III.   Analysis

Plaintiffs plead four claims against the City: excessive force, unlawful seizure, failure to supervise and discipline, and failure to train. Against McCraw, in his official capacity, Plaintiffs plead three claims: excessive force, unlawful seizure, and failure to train.

#### A.  Municipal Liability

The City contends that Plaintiffs cannot establish municipal liability for their §1983 claims of excessive force (Count I) and unlawful seizure (Count II) because Plaintiffs cannot point to evidence that establishes a policy or practice of the City that would make the City liable

3

for the conduct that is the basis for their suit. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

*Monell* provides that a municipality can be liable under § 1983 when the alleged violation of the plaintiff's federal rights is attributable to a municipal policy or practice. *Id*. at 690–91. To establish municipal liability under § 1983, a plaintiff must show (1) an official policy, (2) promulgated by the municipal policymaker, (3) that was the moving force behind the violation of a constitutional right. *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017). "Municipalities are not liable 'on the theory of *respondeat superior*' and are 'almost never liable for an isolated unconstitutional act on the part of an employee.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)).

1. Official Policy[2]

For purposes of a *Monell* claim, an "official policy" can take the form of (1) a formal written policy, ordinance, or regulation officially adopted or promulgated by the municipality's policymakers, or (2) a "persistent, widespread practice…so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002). An official, written policy is facially unconstitutional if it "affirmatively allows or compels unconstitutional conduct." *Edwards*, 70 F.4th at 309 (citation omitted).[3] Where an alleged policy is facially innocuous, a plaintiff must establish that the policy was "promulgated with deliberate indifference to the known or obvious consequences that

---

[2] For summary judgment, the Court assumes, without deciding, that a constitutional violation occurred. *Monell*, 436 U.S. at 690–94; *Harmon v. City of Arlington,* 16 F.4th 1159, 1168 (5th Cir. 2021) (explaining that *Monell* liability is predicated on a constitutional violation).
[3] "An official policy that merely (1) "commits some decisions to an individual officer's on-the-scene discretion" or (2) "gives some detailed instructions while omitting others" does not "affirmatively allow[ ] or compel[ ]" unconstitutional conduct." *Verastique v. City of Dallas*, 106 F.4th 427, 435 (5th Cir. 2024) (quoting *Edwards*, 70 F.4th at 309).

4

constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 (5th Cir. 2001) (citation and quotation marks omitted). Deliberate indifference is a "stringent standard" requiring more than negligence or even heightened negligence. *Id.* "To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations . . . ." *Edwards*, 70 F.4th at 312.

The Second Amended Complaint alleges that the City maintains inadequate use-of-force and crowd management policies, customs, and practices. For summary judgment, Plaintiffs abandon their challenge to unwritten customs or practices. *See* ECF No. 164 at 12. Instead, Plaintiffs challenge DPD's General Orders and Standard Operating Procedures [4]

### i.   *Excessive Force*

Plaintiffs argue that DPD's General Orders and Standard Operating Procedures constitute the City's "policies" and are unconstitutional because they do not expressly prohibit the use of force against a crowd when officers have not assessed individual threats, aggression, or criminal conduct before deploying force.[5] Alternatively, Plaintiffs argue that the City enacted and maintained the challenged policies with deliberate indifference.

At the summary judgment hearing, Plaintiffs conceded they are no longer pursuing facial challenges to DPS's written policies, as *Monacelli v. City of Dallas Tex.*, forecloses their claims. No. 24-10067, 2024 WL 4692025, at *2 (5th Cir. 2024) (finding that the plaintiff failed to plausibly plead that DPD General Order 902.00 was facially unconstitutional based solely on its failure to expressly prohibit "firing or deploying direct contact hits into a crowd of protesters,"

---

[4] Plaintiffs challenge General Order 902.00 and 902.02 (F), General Order 908.00, SWAT Standard Operating Procedures, and Standard Operating Procedures 1604 ("Crowd Control") and 1629 ("Mobile Field Force"). ECF No. 164 at 35–36.
[5] The Court assumes for the purposes of summary judgment, without deciding, that DPD's General Orders and Standard Operating Procedures are official policies.

5

because omissions in a policy's language, without more, are insufficient to support a facial challenge (citation and quotation marks omitted)); *accord. Edwards*, 70 F.4th at 309 (holding that an official written policy is facially unconstitutional only if it affirmatively allows or compels unconstitutional conduct); *see also Verastique*, 106 F.4th at 435.

Regarding their as-applied challenge to DPD's written policies, Plaintiffs provide no evidence that the City promulgated the challenged policies with deliberate indifference. Although they reference a 2018 incident where DPD deployed pepper balls during a protest, Plaintiffs do not identify a pattern of similar prior occasions where DPD officers allegedly used excessive force against protesters or crowds. Absent this pattern, there is no reason to suggest that the City was aware of a constitutional risk posed by the policies, nor that it acted with deliberate indifference in adopting or maintaining them.

Having abandoned their facial challenges and having failed to provide evidence of a pattern or practice, Plaintiffs now advance a different theory—namely, that an alleged inconsistency between DPD's training and its written policies constitutes an "official policy." Plaintiffs argue that there was inconsistent training by DPD of its officers—namely, that some received types of training others did not, and that DPD's General Orders and Standard Operating Procedures did not require officers to observe what some were taught in training, and that this constitutes an unconstitutional practice amounting to a policy. Plaintiffs contend that *Pineda v. City of Houston,* 291 F.3d 325, 329–31 (5th Cir. 2002) supports this theory. The Court disagrees. *Pineda* involved no such theory. Instead, it addressed *Monell* claims based on an alleged unwritten custom and inadequate training, which the Fifth Circuit rejected—namely, for lack of evidence showing a pattern of unconstitutional conduct, including that officers lacked adequate training. *Id*.

6

In contrast, Plaintiffs rely on an alleged inconsistency between DPD's training and its written policies, an argument not advanced in *Pineda*. Even assuming Plaintiffs could show such an inconsistency in training, this does not establish a policy for purposes of *Monell* liability. The Supreme Court and Fifth Circuit precedent are clear: there are two ways to establish municipal liability: (1) a formal policy, or (2) a widespread practice that is so common that it constitutes municipal policy. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385–88 (1989); *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc); *Pineda*, 291 F.3d at 328.

Plaintiffs attempt to establish liability without fitting their claim into the two recognized *Monell* frameworks, leaving their argument without a legal foundation. Their failure to identify a policy or practice amounting to a custom is dispositive of Plaintiffs' excessive force claim under *Monell*.

ii.   *Unlawful Seizure*

Plaintiffs challenge DPD's Standard Operating Procedures because they do not expressly prohibit kettling and argue the procedures are maintained with deliberate indifference.

Facially innocuous policies, like DPD's Standard Operating Procedures, do not establish liability under *Monell* absent evidence that such policies were maintained in a way that resulted in a pattern of unlawful seizures, and that the City's policymaker was aware of this pattern, demonstrating deliberate indifference.[6] The failure to identify an inadequate written policy or unconstitutional practice is dispositive of Plaintiffs' unlawful seizure claim under *Monell*.

---

[6] Plaintiffs argue that kettling constitutes an unlawful seizure, but cite no authority to support that conclusion. The Fifth Circuit recently clarified that an officer has probable cause to arrest an individual obstructing a highway and that such action does not violate the First, Fourth, or Fourteenth Amendments. *Wade v. City of Houston, Tex.*,110 F.4th 797, 799 (5th Cir. 2024). Here, it is undisputed that Plaintiffs were on the Bridge, obstructing traffic, thereby providing officers probable cause to arrest them under Tex. Penal Code § 42.03. *See id*. (citing *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

7

The Court does not address the remaining elements of Plaintiffs' claims of excessive force and unlawful seizure under *Monell* regarding the policymaker and causation, because Plaintiffs have not shown an actionable policy or practice.[7]

### iii. *Failure to Train and Failure to Supervise and Discipline*

Although Plaintiffs assert separate claims for failure to train and failure to supervise and discipline, this Court has found that the elements required to prove a claim under either theory are the same. *Edwards*, 2022 WL 447085, at *1.

To establish these claims, a plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training was a "moving force" in causing a violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010); *Hutcheson*, 994 F.3d at 482. "To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Hutcheson*, 994 F.3d at 482 (citation and quotation marks omitted). Where a plaintiff does not allege a pattern, it is still possible to establish deliberate indifference through the "extremely narrow" single incident exception. *Valle*, 613 F.3d at 542.

At the hearing, the Court rejected the applicability of this exception to the facts alleged. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (explaining that the single incident exception is generally reserved for cases where an officer received no training at all); *cf. Grandstaff v. City of Borger* 767 F.2d 161, 171–72 (5th Cir. 1985) (upholding municipal

---

[7] Despite Plaintiffs' assertion that former Chief of Police Hall was the policymaker for the City, if the Court were to reach the issue, it would find the City Council to be the City's policymaker. *See Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016) ("[U]nder Texas law, the final policymaker for the city of Dallas is the Dallas [C]ity [C]ouncil.") (citation omitted); *Harper v. City of Dallas, Tex.*, No. 3:14-CV-2647-M, 2018 WL 11408879, at *3 (N.D. Tex. Nov. 20, 2018); *Monacelli*, 2024 WL 4692025, at *3 (Wiener, J., concurring).

8

liability where multiple officers engaged in egregious conduct culminating in the fatal shooting of an innocent man, which was immediately ratified by city policymakers by failing to discipline or discharge any of the officers involved). The Fifth Circuit has limited *Grandstaff* to cases where the misconduct amounts to an "incompetent and catastrophic performance" on the part of law enforcement.  *See*, *e.g*., *Fuentes v. Nueces Cnty., Tex.*, 689 F. App'x 775, 779 (5th Cir. 2017).  This case does not present such circumstances.

As conceded at the hearing, Plaintiffs' failure to train claim is based on the same alleged inconsistencies that they advance in their challenges to DPD's policies—namely, that different officers received different training, which Plaintiffs contend amounts to inadequate training. Plaintiffs further argue that this inconsistency in training demonstrates deliberate indifference, as the City Council should have known or been aware that not all officers were receiving the same training.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  The Fifth Circuit has made clear that municipal liability does not arise from alleged training deficiencies alone, such as inconsistent training, nor from generalized assertions that additional or different training might have prevented the alleged harm.  For example, in *Pineda*, the Fifth Circuit rejected a failure to train claim where the plaintiffs did not allege or provide evidence that the officers were so untrained as to be unaware that warrantless home searches, without consent, were unconstitutional.  291 F.3d at 332–33.

Here, Plaintiffs make similar allegations.  They contend that additional training for supervising officers might have prevented the alleged constitutional violations, but, like in *Pineda*, they rely only on testimonial evidence from their expert claiming that some officers

9

required further training.  This is the same type of summary judgment evidence the Fifth Circuit has held insufficient to support a failure to train claim.  *Id.*

Moreover, Plaintiffs present no evidence that the City Council acted with deliberate indifference to a known or obvious risk of constitutional violations.  The City may be held liable under either theory only when there is a pattern of similar constitutional violations stemming from inadequate training or supervision and evidence that the City Council was aware of, but ignored, such risks.  *See Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (citation and quotation marks omitted); *see also Valle*, 613 F.3d at 546.  Plaintiffs do not offer evidence of such a pattern, nor do they provide evidence that the City Council was on notice of a need for additional training or supervision.  Absent such a showing, Plaintiffs cannot establish *Monell* liability under either theory, as they fail to show there is a fact issue as to whether the City was deliberately indifferent.

### B.  Liability of State Official

McCraw moves for summary judgment on all claims against him, arguing that Plaintiffs fail to show any underlying constitutional violation.  The Court agrees that summary judgment is appropriate, but on different grounds.  Plaintiffs fail to demonstrate an ongoing violation of federal law through an unconstitutional policy or custom maintained by DPS.

The Eleventh Amendment bars suits seeking damages from state officials.  *Ex parte Young*, 209 U.S. 123 (1908); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321–22 (5th Cir. 2008).  There is an exception where "[t]he suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law."  *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729,

737 (5th Cir. 2020) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that the *Young* exception does not permit injunctive relief for past conduct). In an official capacity suit, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

i. *Excessive Force and Unlawful Seizure*

Plaintiffs assert excessive force and unlawful seizure claims against McCraw in his official capacity, based on the continued use of DPS's allegedly inadequate use-of-force policies and customs. Specifically, Plaintiffs argue the policies permit excessive force by allowing broad officer discretion and failing to require consideration of the *Graham* factors—namely, the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is actively resisting in analyzing the circumstances giving rise to the allegedly excessive force. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Alternatively, Plaintiffs allege that DPS has a custom of using excessive force and making unlawful seizures, stemming from DPS's use-of-force policies.

To obtain prospective injunctive relief under *Ex parte Young*, Plaintiffs must show an ongoing violation of federal law, not a past injury or speculative future harm. *See NiGen*, 804 F.3d at 394 ("[A] complaint must allege that the defendant is violating federal law, not simply that the defendant has done so.").

Regarding a formal policy, Plaintiffs do not allege that DPS's written use-of-force policies affirmatively compel unconstitutional conduct. Rather, they contend that the policies are inadequate because they fail to prohibit certain conduct. It is not enough that an official policy

allows officer discretion; it must affirmatively authorize or require unconstitutional conduct. Plaintiffs identify no such provision in DPS's policies. Moreover, Plaintiffs' reliance on *Graham* is misplaced. In *Graham*, the Supreme Court established a standard for evaluating whether an officer's use of force was "objectively reasonable" in light of the circumstances at that time, but it does not require law enforcement agencies to prohibit discretion or to include specific criteria in their written policies. *Graham*, 490 U.S. at 397; *see also Verastique*, 106 F.4th at 435.

Regarding a practice, Plaintiffs rely only on testimonial evidence relating to DPS officers' actions on June 1, 2020, but other than a reference to the use of pepper balls in 2018, they do not provide evidence of repeated or widespread use of excessive force or unlawful seizures by DPS. Without a pattern of similar incidents, Plaintiffs cannot establish a custom of unconstitutional conduct. *See Peterson*, 588 F.3d at 850 (explaining that isolated incidents or unsupported testimony are insufficient to establish a municipal custom).

Because *Ex parte Young* requires an ongoing violation of federal law, and Plaintiffs fail to identify either an unconstitutional policy or practice, their claims against McCraw fail as a matter of law.[8]

ii. *Failure to Train*

Plaintiffs allege that DPS officers lacked a proper understanding of the "objective reasonableness" standard and that DPS failed to adequately train officers on its use-of-force policies. However, this claim is not materially distinct from Plaintiffs' policy and custom

---

[8] To the extent Plaintiffs argue that DPS's policy permits or maintains a practice of allowing its officers to "go along" with DPD officers and follow DPD policies during joint operations, and that this practice constitutes an ongoing violation of federal law, the Court disagrees that Plaintiffs have such a claim. As discussed, DPD's use-of-force policies are constitutional. Therefore, Plaintiffs cannot show that DPS has an inadequate policy or practice simply because of its coordination with DPD.

theories and fails for the same reason: Plaintiffs do not show an ongoing violation of federal law. To establish their failure to train claim, Plaintiffs must show a pattern of similar constitutional violations, and that McCraw acted with deliberate indifference to the known or obvious consequences of inadequate training. *See Connick*, 563 U.S. at 62. Plaintiffs provide no evidence of such a pattern and instead rely solely on officer testimony regarding past confusion or misunderstanding, which, even if accepted, does not establish a failure to train or a continuing violation of federal law. Because Plaintiffs fail to show that DPS's training violates federal law, their failure to train claim does not support prospective relief under *Ex parte Young*.

### IV.   Conclusion

For the foregoing reasons, the Court concludes Plaintiffs fail to show there is a genuine issue of material fact regarding their *Monell* claims.[9] Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment and **DENIES AS MOOT** the City's Motion to Exclude.

**SO ORDERED**.

July 3, 2025.

_____
BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] The lack of an underlying cause means summary judgment is appropriate for Plaintiffs' claims of preliminary and injunctive relief.

13